# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MELVIN LEON KELLAM,**

    **Petitioner,**

    v.                                                        **Case No. 11-CV-509**

**WILLIAM POLLARD,**

    **Respondent.**

## DECISION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS AND DISMISSING CASE

On May 27, 2011, petitioner Melvin Leon Kellam ("Kellam") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition states Kellam was convicted of first degree sexual assault in violation of Wis. Stat. § 940.225(1)(b), armed robbery in violation of Wis. Stat. § 943.32(2), intimidation of victim in violation of Wis. Stat. § 940.45(3), and operating vehicle without owner's consent in violation of Wis. Stat. § 943.23(2). (Habeas Petition, Docket # 1 at 2.) Kellam was sentenced to 30 years of incarceration followed by 20 years of extended supervision on count one; 20 years of incarceration followed by 10 years of extended supervision on count two, consecutive to count one; three years of incarceration followed by two years extended supervision on count three, concurrent to count two; and two years of incarceration followed by two years extended supervision on count four, concurrent to count three. (Petitioner's Br. at 5-6, Docket # 13.)

Kellam challenges his judgment of conviction which was entered on September 15, 2006. In his petition, Kellam alleges that:

        (1)    The trial court should have granted the defendant's motion to suppress eye-witness identification.

(2) The trial court erred when it failed to grant the defendant's motion to suppress all statements taken from the defendant.

(3) The trial court erred when it refused to submit to the jury a lesser included offense of second degree sexual assault.

(4) Filed 974.06 motion for a *Machner* hearing. Do [sic] to the fact that there were four (4) jurors that slept during the trial.[1]

(Docket # 1 at 6-9.)

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(a) (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

This Court conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 Cases. By order filed August 2, 2011, this Court determined that "it does not plainly appear from the petition that Kellam is not entitled to relief." (Docket # 7.) Thus, this Court ordered respondent Warden William Pollard ("respondent") to answer the petition for a writ of habeas corpus. The respondent answered the petition. The parties subsequently briefed the petition for a writ of habeas corpus and the petition is ready for disposition. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## RELEVANT FACTUAL BACKGROUND

Kellam was charged in a criminal complaint with first degree sexual assault, armed robbery, intimidation of victim, and operating a vehicle without the owner's consent. (Petitioner's Br. at 5,

---

[1] Although Kellam frames Ground Four in his petition using the cited language, a review of the supporting facts in the petition shows Kellam is making an ineffective assistance of counsel claim. (Habeas Petition at 9, Docket # 1.)

- 2 -

Docket # 13.) The charges stem from a May 13, 2005 robbery and sexual assault at a church in Kenosha, Wisconsin. (*Id.* at 6.) Kellam pled not guilty to all charges. (*Id.*) A jury trial was held and Kellam was found guilty on all four counts. (*Id.*)

Prior to trial, Kellam sought to suppress the victim's out-of-court identification of him via a photo array, arguing the photo array was impermissibly suggestive. (*Id.* at 6-7.) Kellam also argued statements he made to law enforcement should have been suppressed because they were given in violation of his *Miranda* rights. (*Id.* at 6.) The trial court denied both of these motions. (Oct. 21, 2005 Motion Hearing Tr. at 20-24, Docket # 11-18); (Mar. 24, 2006 Motion Hearing Tr. at 42-47, Docket # 11-21.) Following trial, Kellam asked to have a lesser included offense of second degree sexual assault submitted to the jury. (Petitioner's Br. at 6, Docket # 13.) The trial court declined to instruct the jury on second degree sexual assault. (Sept. 14, 2006 Jury Trial Tr. at 34-36, Docket # 11-34.)

Kellam appealed the trial court's decision on these three issues to the Wisconsin Court of Appeals. The court of appeals affirmed the trial court's orders on July 29, 2009. (*State v. Kellam*, No. 2007AP2452-CR, 2009 WL 2244397 (July 29, 2009), Docket # 11-5.) Kellam filed a petition for review with the Wisconsin Supreme Court on August 25, 2009. The petition was denied on November 12, 2009. (Docket # 11-8.)

Kellam also states that he filed a motion for postconviction relief under Wis. Stat. § 974.06 alleging ineffective assistance of counsel. (Habeas Petition at 9, Docket # 1.) Kellam explained the motion was "[d]enied for untimely filing." (*Id.*) A review of the state court proceedings in this matter confirms Kellam's motion for postconviction relief was denied on September 30, 2010. Consolidated Court Automation Programs (CCAP), WI Circuit Court Access for Kenosha County, Case No. 2005CF553, at http://wcca.wicourts.gov (last visited Feb.15, 2012). Kellam's notice of appeal was

filed on February 22, 2011, well after the 20 days in which Kellam was required to file his notice of appeal under Wis. Stat. § 809.30(2)(j). Kellam's appeal was dismissed, for lack of jurisdiction, on April 7, 2011. Kellam filed a motion for reconsideration, which was denied on April 25, 2011. Wisconsin Supreme Court and Court of Appeals Access Database, Appeal No. 2011AP461, at http://wscca.wicourts.gov (last visited Feb. 15, 2012). A review of the Wisconsin Supreme Court and Court of Appeals Access Database indicates Kellam did not file a petition for review with the Wisconsin Supreme Court, which he was required to do within 30 days of the denial of his motion for reconsideration. Wis. Stat. § 808.10(2).

## STANDARD OF REVIEW

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214, which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. *Lindh v. Murphy*, 96 F.3d 856, 870-77 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact

- 4 -

de novo, that review is 'tempered by AEDPA's deferential constraints.'" *Hereford v. McCaughtry*, 101 F. Supp. 2d 742, 746 (E.D. Wis. 2000)(quoting *Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999)).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000)(quoting *Williams v. Taylor*, 120 S.Ct. 1495, 1519 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 120 S.Ct. at 1523).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

- 5 -

232 F.3d 562, 565-66 (7th Cir. 2000)(quoting *Williams*, 120 S.Ct. at 1522), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

**Exhaustion and Procedural Default**

A federal court may not entertain a petition from a prisoner being held in state custody unless the petitioner has exhausted his available state remedies prior to seeking federal habeas relief. *See* 28 U.S.C. § 2254(b); *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). "This so-called exhaustion-of-state-remedies doctrine serves the interests of federal-state comity by giving states the first opportunity to address and correct alleged violations of a petitioner's federal rights." *Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007). Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus is the duty to fairly present his federal claims to the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004).

For a constitutional claim to be fairly presented to a state court, both the operative facts and the controlling legal principles must be submitted to that court. *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). Also, the petitioner must invoke one complete round of the normal appellate process, including seeking discretionary review before the state supreme court. *McAtee v. Cowan*, 250 F.3d 506, 508-09 (7th Cir. 2001).

If state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted; however, exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). A habeas petitioner

who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). A procedural default will bar federal habeas relief unless the petitioner can demonstrate both cause for and prejudice stemming from that default or he can establish that the denial of relief will result in a miscarriage of justice. *Id.*

### 1. *Ineffective Assistance of Counsel Claim*

Kellam acknowledges in his habeas petition that he failed to exhaust his state court remedies on the ineffective assistance of counsel claim. (Docket # 1 at 9.) In its Rule 4 Order, this Court stated that by failing to timely file an appeal and petition for review, Kellam defaulted his federal claims in state court; thus, meeting the technical requirements for exhaustion as there are no state remedies available to him. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). (Rule 4 Order at 3-5, Docket # 7.) However, this Court also stated that a federal habeas court will only review a defaulted claim if the petitioner demonstrates either (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider the claims would result in a fundamental miscarriage of justice. *Id.* at 750.

Kellam has not addressed this claim in his brief in support of his habeas petition. (Docket # 13.) By failing to brief the issue, it appears Kellam has abandoned this claim. Further, Kellam has not demonstrated either cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or that failure to consider the claims would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. Thus, Kellam's ineffective assistance of counsel claim must fail.

*2. Photo Array Claim*

Before this Court, Kellam argues that the trial court should have granted his motion to suppress eye-witness identification. However, he has procedurally defaulted this claim by failing to present it to the Wisconsin Supreme Court. Although Kellam raised the photo array issue before the court of appeals, who decided the issue on its merits, Kellam did not present the issue to the Wisconsin Supreme Court in his petition for review. Kellam, through counsel, raised two claims in his petition for review: (1) whether the court of appeals properly applied the harmless error test in regard to a potential *Miranda* violation and (2) whether the court of appeals properly analyzed the trial court's refusal to submit to the jury a lesser included offense of second degree sexual assault. (Petition for Review at 4, Docket # 11-6.) While the Wisconsin Supreme Court denied his petition for review, Kellam was still required to present the issue to it. *See Bintz v. Bertrand*, 403 F.3d 859, 864 (7th Cir. 2005). Thus, by failing to present the photo array issue to the Wisconsin Supreme Court, Kellam has procedurally defaulted this claim.

Additionally, as previously stated, a federal habeas court will only review a defaulted claim if the petitioner demonstrates cause and prejudice for the default or upon a showing that a failure to grant him relief would work a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Kellam does not argue either cause for his procedural default or that the procedural default would cause a fundamental miscarriage of justice. As Kellam failed to properly exhaust his state remedies by failing to present the photo array claim to the Wisconsin Supreme Court, he has procedurally defaulted his challenge to the photo array claim. Thus, this claim must also fail.

Finally, the respondent does not dispute that Kellam has exhausted his state court remedies as to his *Miranda* claim and as to his jury instruction claim on the lesser included offense of second

degree sexual assault. The Court agrees. Kellam presented both of these claims to the court of appeals, which decided them on their merits. (Docket # 11-5.) Further, Kellam presented both of these claims to the Wisconsin Supreme Court in his petition for review. (Docket # 6.) As such, this Court will address both of these claims.

**The Merits of Kellam's Remaining Federal Claims**

*1.     Miranda Violation*

Kellam argues the trial court erred when it failed to grant Kellam's motion to suppress all statements taken from him. Kellam had three encounters with law enforcement on May 13, 2005. The Court will discuss each encounter in turn.

1.1     The First Encounter

Kellam's first encounter with law enforcement was at approximately 1 p.m. on May 13, 2005 when Detective Ric Bentz of the Kenosha Police Department came to speak to Kellam while he was in custody. (Oct. 10, 2005 Hearing Tr. at 10-12, Docket # 11-17.) Detective Bentz testified he told Kellam he wanted to take a statement from him regarding the "incident at Bradford Church." (*Id.* at 12.) Kellam responded that he did not know anything about what happened there, so Detective Bentz asked Kellam if they could speak about a domestic violence allegation lodged by Kellam's girlfriend. (*Id.*) Detective Bentz explained that the domestic violence inquiry arose because Kellam was under a 72-hour restraining order barring contact with his girlfriend. (*Id.* at 35.) Kellam's girlfriend called police while police were looking for a suspect in the church assault. She stated that Kellam arrived at her residence driving a white Honda whose license plate matched the vehicle being sought by police in connection with the church assault. (*Id.* at 30.) The white Honda was stolen from the sexual assault victim by her assailant. (*Id.* at 35-36.)

Kellam started explaining that he went to his girlfriend's apartment, left a car key on the window sill and knocked on her window. (*Id.* at 12.) Kellam wanted to know why he had been arrested. (*Id.* at 13.) At that point, the detective interjected that Kellam needed to receive his *Miranda* rights and read the rights to Kellam. (*Id.* at 12-13.) Kellam stated that he wanted a lawyer, and he wanted to know the charges he faced. (*Id.* at 15.) Detective Bentz told him that because Kellam had requested counsel, the detective could not discuss the charges and directed Kellam to the arrest sheet. (*Id.*)

After being *Mirandized*, Kellam asked what he was being charged with. (*Id.* at 18.) Detective Bentz told Kellam that they would be back to tell him what he was being charged with, but they were looking for the white Honda. (*Id.*) Detective Bentz testified that when he inquired about exchanging information about the Honda for the charges, Kellam stated that he did not know anything about a Honda. (*Id.* at 47-48.) At this point, the first encounter ceased. (*Id.* at 18.)

Kellam argues the pre-*Miranda* statements regarding placing keys on his girlfriend's window sill were the result of custodial questioning and should have been suppressed. (Petitioner's Br. at 16-17.)

Not all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 299 (1980). "Interrogation" is defined as "express questioning" or "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Id*. at 301. "Volunteered statements of any kind are not barred by the Fifth Amendment." *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). If a defendant makes a statement in response to words or actions by the police that do not constitute interrogation

- 10 -

Case 2:11-cv-00509-NJ   Filed 02/24/12   Page 10 of 20   Document 19

or if the defendant himself initiates further communications, the police are not prohibited from "merely listening" to his voluntary statement. *Edwards v. Arizona*, 451 U.S. 477, 485 (1981).

In this case, the court of appeals, citing *State v. Hambly*, 2008 WI 10, 307 Wis.2d 98, 745 N.W.2d 48 found that Kellam's pre-*Miranda* statement was not the result of interrogation and was not responsive to the detective's inquiry about whether Kellam wanted to make a statement relating to the domestic violence case. (Docket # 11-5 at 12.) The court of appeals held that: "An objective observer would not have concluded that the detective's inquiry-do you want to give a statement-would be likely to elicit an incriminating response, rather than the 'yes' or 'no' an objective observer would have expected." (*Id.*)

Applying the deferential standard which is owed to the state court under AEDPA, the court of appeals' finding regarding Kellam's first encounter with law enforcement is consistent with *Innis*. *See Sanchez*, 189 F.3d 619, 623 (7th Cir. 1999)("Under AEDPA federal courts give deference to state court merit adjudications."). The *Hambly* decision relied upon by the court of appeals cites the *Innis* test for custodial interrogation. As such, Kellam has failed to demonstrate that the state court's application of *Innis* to Kellam's first encounter with law enforcement was either contrary to, or an unreasonable application of, clearly established federal law.

### 1.2 The Second Encounter

Kellam's second encounter with law enforcement was with Officer Thomas R. Wilson of the Kenosha Police Department. Officer Wilson testified that he arrested Kellam on the day of the assault and placed him in a holding cell. (Oct. 21, 2005 Hearing Tr. at 4-5, Docket # 11-18.) Officer Wilson approached the holding cell in response to a noise from the cell. (*Id.* at 5.) Kellam told Officer Wilson that he wanted to speak with the detective to give him some other information. (*Id.* at 6.) This

was the extent of Officer Wilson's contact with Kellam after he placed him in the holding cell. (*Id.* at 7.) No threats or promises were made, and Kellam did not ask for any comfort items. (*Id.* at 6-7.) Officer Wilson did not discuss the *Miranda* rights with Kellam. (*Id.* at 7-8.)

Officer Wilson conceded that he was aware that police were looking for a Honda in connection with the sexual assault. (*Id.* at 9.) Kellam told Officer Wilson he would disclose the vehicle's location to the detective if he was informed of the charges. (*Id.* at 10.) However, Officer Wilson did not ask Kellam anything about the vehicle or initiate any conversation with Kellam. (*Id.*)

After a suspect has expressed his desire to deal with the police through counsel, he is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Edwards*, 451 U.S. at 484-85. Regarding Kellam's second contact with police, the court of appeals found that Kellam initiated the contact by getting Officer Wilson's attention and asking to speak to the detective about the vehicle in exchange for information about the charges. (Docket # 11-5 at 11.) The court of appeals concluded Officer Wilson did not interrogate Kellam. (*Id.*) Officer Wilson testified that he did not ask Kellam anything about the vehicle or initiate any conversation with Kellam; rather, Kellam got Officer Wilson's attention and asked to speak to the detective. The court of appeals' finding that Officer Wilson did not interrogate Kellam is also not contrary to, nor an unreasonable application of, clearly established federal law.

### 1.3 The Third Encounter

Detective Bentz testified as follows about the third encounter. Ten minutes after he left Kellam's holding cell after the first encounter, Detective Bentz spoke with Officer Wilson. (Docket # 11-17 at 20-21.) Officer Wilson told the detective that Kellam had rapped on the cell window and

said he would divulge the whereabouts of the Honda if police would tell him the charges against him. (*Id.* at 23.) Based upon this information, the detective returned to Kellam's holding cell. (*Id.*) The detective did not re-read the *Miranda* rights at the start of the third encounter. (*Id.* at 24.)

Kellam offered to tell the detective the whereabouts of the Honda in exchange for information about the charges. (*Id.*) Detective Bentz asked Kellam if he was willing to waive his *Miranda* rights and speak without counsel present. (*Id.*) Kellam stated that he wanted to waive those rights, and Detective Bentz informed Kellam that he was being charged with armed robbery and vehicle theft. (*Id.*) Kellam then asked about other charges, and the detective reminded Kellam that they were going to exchange information about the charges for the Honda's location. (*Id.* at 25.) Kellam disclosed the Honda's location, and the detective then told him he was also being charged with the church sexual assault. (*Id.*) Kellam denied the assault. Kellam agreed to give a statement, so he and the detective adjourned to the interview room where the detective began reading the *Miranda* rights waiver form to Kellam. (*Id.* at 25-26.) Kellam interrupted and stated he was dating the victim, whatever happened between them was consensual, and he had a fight with his girlfriend. (*Id.* at 26.) Detective Bentz finished reading the *Miranda* waiver form, but before Kellam signed the waiver form, Detective Bentz asked him the victim's name. Kellam said he could not say because she was married. (*Id.*) Kellam then demanded counsel. (*Id.*) The detective returned Kellam to the holding cell without further conversation. Kellam never signed the *Miranda* waiver form. (*Id.* at 28.) The third encounter lasted a total of fifteen minutes. (*Id.* at 26-27.)

Regarding this third encounter, the court of appeals found the trial court erred by failing to expressly find that Kellam waived his *Miranda* rights. (Docket #11-5 at 5.) While the trial court determined Kellam initiated the encounter with Detective Bentz, the trial court did not explicitly find

- 13 -

that Kellam waived his *Miranda* rights. (*Id.* at 12.) Citing *Oregon v. Bradshaw*, 462 U.S. 1039 (1983), the court of appeals stated that whether a suspect initiates conversation after invoking his *Miranda* rights and whether a suspect waived his *Miranda* rights are separate inquires.

However, despite this error, the court of appeals found that even if the trial court should have suppressed any statement made by Kellam during this third encounter, the error was harmless because of the very strong evidence of Kellam's guilt adduced at the jury trial. (Docket # 11-5 at 13.) The court of appeals held there was sufficient evidence to convict Kellam, none of which depended upon any of Kellam's statements to the police. (*Id.* at 13-14.) Thus, the court of appeals was "satisfied beyond a reasonable doubt that the erroneous admission of any statement did not contribute to Kellam's conviction and was therefore harmless error." (*Id.* at 14.)

This Court's duty is not to review this finding *de novo*. Rather, the standard for harmless error analysis on habeas corpus review, after a state court has already concluded that the error was harmless beyond a reasonable doubt, is whether the state's use of the evidence had "substantial injurious effect or influence in determining the jury's verdict." *Enoch v. Gramley*, 70 F.3d 1490, 1500 (7th Cir. 1995)(citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Easley v. Frey*, 433 F.3d 969, 974 (7th Cir. 2006)(finding a habeas corpus petitioner must show that a *Miranda* violation had a substantial and injurious effect or influence in determining the jury's verdict in order to succeed on collateral review).

Here, Kellam has not shown that admission of the statement of the location of the Honda had an injurious effect or influence in determining the jury's verdict. To begin, Kellam's defense was that the State failed to prove he was the assailant. But, in closing argument, he conceded to taking and driving the victim's white Honda Accord. (Sept. 15, 2006 Jury Trial Tr. at 81, Docket # 11-36.) In

- 14 -

light of this trial posture, it was reasonable for the court of appeals to find the admission of Kellam's statements to police about the location of the Honda harmless.

Even without Kellam's statement regarding the location of the Honda, there was more than sufficient evidence to convict Kellam of the charged offenses. The victim identified Kellam at trial as her assailant. (Sept. 11, 2006 Jury Trial Tr. at 39, Docket # 11-30). The victim was familiar with Kellam because he had visited the church to use the telephone one or two months before the assault. (*Id.* at 40.) Further, and on the day of the assault, the victim spent thirty to forty-five minutes with Kellam, giving her time to become familiar with Kellam's physical appearance. (*Id.* at 68.)

The victim testified that the assailant stole her cell phone and vehicle. (*Id.* at 47.) Kellam called his girlfriend several times using the victim's cell phone. (Sept. 12, 2006 Jury Trial Tr. at 58-59.) Kellam drove the victim's vehicle to his girlfriend's house and his girlfriend reported Kellam's visit and the vehicle he was driving to the police. (*Id.* at 56-57.) The victim's cell phone was found stuffed under the rear seat of the squad car into which Kellam was placed after he was arrested. (Docket # 11-30 at 80); (Docket # 11-31 at 81-83, 112-14.)

Additionally, the victim testified that her assailant threatened to cut her throat while holding a metal object on a key chain to her throat. (Docket # 11-30 at 161.) Upon his arrest, Kellam had a key chain with a utility knife attachment. (Docket # 11-31 at 83.)

Finally, forensic testing matched biological material obtained from the victim to biological material obtained from Kellam and excluded 99.7 percent of the African-American male population from the donor of the male sample. (Sept. 13, 2006 Jury Trial Tr. at 79-81, Docket # 11-33.)

On the totality of this evidence, the Wisconsin Court of Appeals did not unreasonably apply the harmless error test in Kellam's case. In sum, Kellam has failed to show that admission of the

- 15 -

Case 2:11-cv-00509-NJ   Filed 02/24/12   Page 15 of 20   Document 19

statement taken in violation of *Miranda* had a substantial and injurious effect or influence in determining the jury's verdict. *See Easley*, 433 F.3d at 974. As such, Kellam's habeas claim regarding the *Miranda* violation fails.

    *2.    Lesser Included Offense of Second Degree Sexual Assault*

Next, Kellam argues the trial court erred when it refused to submit to the jury a lesser included offense of second degree sexual assault. Under Wisconsin law, first degree sexual assault involves use or the threat to use a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a dangerous weapon, Wis. Stat. § 940.225(1)(b), whereas second degree sexual assault involves the use or threat of force or violence, Wis. Stat. § 940.225(2)(a).

In general, the failure of a state trial court to instruct the jury on a lesser offense does not implicate a federal constitutional question and will not be considered in a federal habeas corpus proceeding. *Reeves v. Battles*, 272 F.3d 918, 920 (7th Cir. 2001). However, the omission of an instruction regarding a particular offense may effectively result in a directed verdict, thereby implicating Sixth and Fourteenth Amendment rights. *Id.* In a habeas action, the question is not whether the failure to instruct on a lesser included offense was correct or incorrect under state law, but rather whether failure to do so constituted a defect so fundamental that it results in a complete miscarriage of justice or omission inconsistent with the standards of fair procedure. *Id.*

Kellam has not met this "especially heavy" burden. *See id.* Kellam does not argue the omission of the instruction on second degree sexual assault constituted a defect so fundamental that it resulted in a complete miscarriage of justice or omission inconsistent with the standards of fair procedure. Rather, Kellam argues the evidence showed that the victim's compliance to the sexual assault was obtained through slapping and pushing rather than through the use of a weapon.

- 16 -

Kellam's argument is in essence that the use of the weapon had ceased by the time of the sexual assault. As a result, he contends an instruction for the lesser included offense of second degree sexual assault was warranted.

Even considering the merits of Kellam's argument, the evidence does not support his contention. The victim testified that after she let him into the church to use the phone, he grabbed her by the collar and held a metal object to her throat. (Docket # 11-30 at 43-44.) The victim believed the object to be a keychain based on hearing key chain noises. (*Id.* at 44.) Kellam threatened to cut her throat. (*Id.*) At the time of his arrest, Kellam was found with a utility knife attachment on his key chain. (Docket # 11-31 at 83.) Kellam forced the victim upstairs to her office to obtain money from her purse. (Docket # 11-30 at 45.) He shoved her up the stairs and when she protested the impending sexual assault, Kellam slapped her. (*Id.* at 53.) After the assault, Kellam bound the victim with the cord from a space heater and told her not to tell anybody of the events that transpired or else he would come back and kill her. (*Id.* at 60-61.)

The trial court in denying the lesser-included instruction, saw the above described events as one continuous event flowing from the initial threat with the object to the victim's throat, instead of separate events, as characterized by Kellam. The court of appeals agreed and found that the victim was compelled to submit to the assault because she feared injury by the object Kellam had earlier held to her neck as he threatened to cut her throat. (Docket # 11-5 at 15.) This is a reasonable view of the evidence. Accordingly, Kellam has not shown the trial court's failure to instruct the jury on second degree sexual assault constituted a defect so fundamental that it results in a complete miscarriage of justice or omission inconsistent with the standards of fair procedure. His habeas claim on this ground must fail.

# CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n. 4).

When issues are resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.* at 485.

In this case, as to the two claims dismissed on the merits, (the *Miranda* claim and the lesser included offense claim), reasonable jurists would not find the court's decision to deny the petition debatable or wrong. First, as to the *Miranda* claim, it is not debatable that the court of appeals correctly applied federal law and based on the totality of the evidence, the court of appeals did not unreasonably apply the harmless error test. As to the lesser included offense claim, the overwhelming evidence indicates Kellam cannot meet his heavy burden of showing the omission of the second degree sexual assault instruction resulted in a complete miscarriage of justice or omission inconsistent

with the standards of fair procedure. Thus, the court will deny a certificate of appealability as to these two claims.

The Court will also deny a certificate of appealability as to the two claims dismissed on procedural grounds. The Court dismissed Kellam's photo array claim on the procedural ground that he failed to fully and fairly present the issue to the Wisconsin Supreme Court. No reasonable jurist could conclude that his petition for review included a full and fair presentment of the photo array claim. The photo array issue is not listed among Kellam's Statement of Issues, nor is it mentioned anywhere in the petition for review before the Wisconsin Supreme Court. (Docket # 11-6.) The petition was prepared by an attorney, not by a *pro se* petitioner. As such, reasonable jurists would not debate the correctness of the Court's procedural ruling. Given this finding, the Court need not address the validity of Kellam's photo array claim.

On Kellam's ineffective assistance of counsel claim, Kellam did not brief the claim and thus abandoned the issue. Reasonable jurists would not disagree on the dismissal of this claim.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 24th day of February, 2012.

                                          BY THE COURT

                                          *s/Nancy Joseph*
                                          NANCY JOSEPH
                                          United States Magistrate Judge